## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA
## MONROE DIVISION

| | | |
|---|---|---|
| **HEATHER R. ALFORD** § | | **CIVIL ACTION NO. 3:22-cv-05758** |
| *Plaintiff* § | | |
| § | | |
| **v.** § | | |
| § | | |
| **DG FOODS, LLC** § | | |
| *Defendant* § | | |
| § | | **JURY DEMAND HEREIN** |

### PLAINTIFF'S ORIGINAL COMPLAINT

**NOW INTO COURT,** through undersigned counsel, comes Plaintiff, **HEATHER R. ALFORD** resident of the full age of majority and domiciled in Farmerville, Louisiana, who respectfully avers as follows:

### JURISDICTION AND VENUE

1. Plaintiff brings this action under Title VII of the Civil Rights Act of 1964 ("Title VII"), as it appears at 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981, and Family and Medical Leave Act ("FMLA"), as it appears at 29 U.S.C. § 2601 *et seq.*

2. This Court has jurisdiction pursuant to the following statutes:

   a. 28 U.S.C. § 1331, which gives district courts original jurisdiction over civil actions arising under the Constitution, law or treaties of the United States; and

   b. 28 U.S.C. § 1343 (3) and (4), which give district courts jurisdiction over actions to secure civil rights extended by the United States government.

3. Plaintiff filed a charge with the Equal Employment Opportunity Commission (EEOC) prior to instituting action. Plaintiff signed the formal EEOC Charge on or about February 12, 2021 (Charge No. 461-2021-00177).

4. Plaintiff received the EEOC's Notice of Conciliation Failure and Notice of Right to Sue on August 4, 2022. *See* Exhibit A. Plaintiff is afforded 90 days from her receipt of such Notice to commence suit, and the date of this filing is within the statutory period.

5. Venue is appropriate in this judicial district under 28 U.S.C. § 1391 (b) because the events that gave rise to this Complaint occurred in the Western District of Louisiana, specifically in Morehouse Parish, making the Monroe Division the most appropriate Division for this suit. Defendant terminated Plaintiff from employment at its Bastrop, Louisiana facility, which is located within the Parish of Morehouse, State of Louisiana.

## PARTIES

6. Plaintiff is a citizen of the United States and resides in the State of Louisiana.

7. Plaintiff is Caucasian and, as such, is a member of a protected race class.

8. Plaintiff is Hispanic and, as such, is a member of a protected national origin/ethnicity class.

9. Defendant, **DG FOODS, LLC,** is a domestic limited liability company authorized and conducting business in the State of Louisiana. It may be served through its agent for service of process, John White, at 5872 Airport Road, Bastrop, LA 71220-5872.

10. At all times relevant to the instant suit, Plaintiff worked for Defendant at its Bastrop, Louisiana location, which is located within the Parish of Morehouse, State of Louisiana.

*{Remainder of Page Intentionally Left Blank}*

## STATEMENT OF FACTS

11. Plaintiff began her employment with Defendant as a Shift Manager/Superintendent on July 2, 2018.

12. Plaintiff performed her duties as a Shift Manager/Superintendent exemplarily. Plaintiff was not issued any verbal or written reprimands of any kind during her employment.

13. Within approximately one (1) month of Plaintiff's hire, an African American supervisor, Vanessa Jones ("Jones") loudly expressed her hatred for and animosity toward "white folks" in a deliberate attempt to catch Plaintiff's attention.

14. Jones, without any basis therefore, regularly accused Plaintiff of being an "oppressor" (and referring to her as one) and began a campaign of progressive harassment toward Plaintiff, due to nothing other than the fact that Plaintiff was a different race and nationality than the vast majority of DC employees at the Bastrop, Louisiana facility: African American. Jones' Facebook posts alone reflect Jones' significant, unequivocal animosity against non-African American individuals, as well as her unequivocal preference and support of African American individuals.

15. Consistently throughout Plaintiff's employment, any time a non-African American was hired or promoted, the African American population at the plant would become increasingly upset with and hostile toward Plaintiff. On several occasions, Jones walked up to Plaintiff and screamed in Plaintiff's face in an intimidating and aggressive manor, and Jones repeatedly instructed her subordinate employees to disregard any instruction Plaintiff gave.

16. On numerous occasions following Jones' harassive conduct, Plaintiff reported Jones' behavior to Plant Managers, John White ("White")(Anglo-Caucasian) and/or Doug Stallings ("Stallings")(Anglo-Caucasian). On each and every occasion, White would either refuse to accept responsibility to address Plaintiff's report, or he would physically roll his eyes at Plaintiff to evince his clear animosity toward Plaintiff for coming to him with such a concern.

17. On October 8, 2020, Jones was returning to the production line and met with Plaintiff aggression, stating loudly, in the presence of other employees, that the other African American employees should not take work orders from Plaintiff.

18. Shortly after Jones' comment on the work floor, an hourly associate, Lawanda Williams ("Williams")(African American) approached Plaintiff in her office. At that time, Williams indicated to Plaintiff that she was concerned for Plaintiff's safety, as well as her own, should anyone see her speaking with Plaintiff. In response, Plaintiff brought Tonya Armfield ("Armfield") (Anglo-Caucasian) into the office to witness the report, at which time Williams reported that Jones has openly stated to staff that she (Jones) would do "whatever it takes to get [Plaintiff] gone," and that, "it's fixing to be a war up in here! Black versus White!"

19. Gravely concerned for her physical safety, Plaintiff immediately reported the information she acquired from Lawanda to White. In a text message to White, Plaintiff stated that she felt like she needed to leave for the day because she did not feel safe returning to the production floor.

20. In response, White contacted his immediate supervisor/ Human Resources Director, Michael Moss ("Moss") (Anglo-Caucasian). Thereafter, White sent Plaintiff home for the day, stating to her that they would conduct an investigation into her complaint.

21. On October 8, 2020, White indicated to Plaintiff that he believed Plaintiff "[did] an awesome job." In response to Plaintiff's request for performance feedback, White stated, "If anything at all, maybe you micromanage at times, but you really have to with this group."

22. Upon information and belief, in response to Plaintiff's October 8, 2020 report, White did not take Plaintiff's report seriously and, instead, simply decided that the employee who had communicated the threat to Plaintiff was "not a reliable source" because she "is constantly in trouble and has numerous mental issues with the state of Louisiana."

23. On October 12, 2020, the Monday following Plaintiff's complaint, White and Moss met with Plaintiff informed Plaintiff that she was being demoted and transferred to the night shift. Plaintiff's pay rate was cut by approximately $10,000.00 as a result thereof.

24. Upon information and belief, DG took absolutely no remedial action toward Jones regarding the complaint Plaintiff made on October 8, 2020.

25. Upon learning that she was being demoted, Plaintiff did not immediately agree to the same. Plaintiff indicated to White and Moss that she would need a couple of days to consider the situation and her options moving forward.

26. Plaintiff was permitted to miss a couple of days of work and, during that time, Defendant installed approximately nine (9) cameras in and around Plaintiff's office in an effort to ascertain her every whereabout and action.

27. When Plaintiff returned to work on the night shift and noticed the cameras, she felt intimated, scared, and entirely violated by Defendant.

28. On the first or second night Plaintiff returned to work and performed work on the night shift, White sent in a supervisor from the day shift to "spy" on Plaintiff or otherwise report Plaintiff's performance back to White.

29. The following evening, Plaintiff's roommate, who was Defendant's night shift Superintendent, found a notebook containing White's detailed, minute-by-minute timeline of of Plaintiff's workday. Plaintiff's roommate sent Plaintiff a picture of the same on or about October 20, 2020.

30. Plaintiff was so upset by the picture that she went to her treating physician, who took Plaintiff off of work due to stress-related conditions including, but not limited to panic attacks, insomnia, migraines, and depression.

31. On October 21, 2020, Plaintiff requested a medical leave of absence under the FMLA from White due to the stress she was experienced due to the pervasive and severe harassment, insubordination, and recent demotion. During this timeframe, Plaintiff was medically diagnosed with panic attacks, insomnia, migraines, and depression. Moreover, each of these conditions were stress-induced and came as a direct result of the hostile work environment to which Plaintiff had been repeatedly subjected. Plaintiff presented a physician's note reflecting this information to Defendant, as well as the order that she be taken off of work.

32. White approved Plaintiff's request for leave, and Plaintiff completed and submitted the requested FMLA questionnaire to Defendant on October 21, 2020. The form reflects that leave was anticipated to span from October 21, 2020 through January 21, 2021.

33. After October 21, 2020, Defendant made absolutely no effort whatsoever to connect with Plaintiff regarding accommodations or her anticipated return-to-work date.

34. During this timeframe, Plaintiff received one paycheck, which compensated her for the days she had worked during the pay period, in addition to unused vacation and sick pay time.

35. Following that paycheck, Plaintiff remained on leave without pay.

36. In February 2021, Plaintiff contacted Defendant to inquire whether her employment remained active and whether she could return to work. Plaintiff received no answer in response.

37. Ultimately, and despite any formal response by Defendant to Plaintiff's status request, Defendant discontinued her wages in approximately February 2021, effectively terminating her employment at that time.

**FIRST CAUSE OF ACTION:**
**Racial Discrimination (Hostile Work Environment)**
*Pursuant to 42 U.S.C. § 2000e et seq.*

38. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

39. Under Title VII, it is an unlawful employment practice for an employer to discharge any individual, or otherwise discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1).

40. Defendant is an "employer" subject to the provisions of Title VII. At all relevant times, Defendant was an entity in an industry affecting commerce who had fifteen or mor employees. *See* 42 U.S.C. § 2000e(b).

41. Plaintiff is Caucasian and, as such, is a member of a protected class.

42. Plaintiff is Hispanic and, as such, is a member of a protected class.

43. Plaintiff was qualified for her position as Superintendent/Shift Manager. Plaintiff was able to perform all functions of her job, and she received no performance-based reprimands of any kind during her employment.

44. Consistently throughout her employment, Plaintiff was subjected to unwanted harassment by African American co-workers on the basis of her race, color, and/or national origin.

45. The alleged conduct was pervasive, as different instances of harassment (whether it be intentional insubordination or aggressive, verbal remarks/threats) occurred on at least a daily basis, if not more frequently.

46. Most notably, Jones repeatedly referred to Plaintiff and other non-African American management officials as "oppressors" and other racially demeaning terms, repeatedly refused to follow Plaintiff's work directives (and, in fact, instructed her own subordinate, African American employees to do the same), and went on a crusade in an effort to ensure that Plaintiff, as well as all other non-African American supervisors/superintendents, were terminated and replaced with African Americans.

47. Plaintiff was significantly offended and disturbed by the racially harassive conduct, and she repeatedly reported the racial harassment to Plant Managers, White and Stallings. Not only did management entirely disregard Plaintiff's complaints and take no remedial action whatsoever, but White went so far as to physically roll his eyes at Plaintiff to demonstrate his irritation toward Plaintiff for bringing complaints of this type to his attention.

48. In addition to Plaintiff's repeated reports about what she perceived to constitute racial harassment by African American employees, Plaintiff reported Jones' verbal threats and comments to White (who, in turn, reported the same to Moss) on October 8, 2020.

Plaintiff's text messages and conversations to White readily indicated that she felt physically threated and unsafe by Jones' most recent comments and threats. That being said, not only did Defendant altogether fail or otherwise refuse to address the longstanding racial issues with Jones – just as it had ignored Plaintiff's concerns on every other occasion – but Defendant went so far as to penalize Plaintiff by moving Plaintiff to the night shift, demoting her, and significantly reducing her pay and supervisory authority.

49. Following Defendant's refusal to address Jones, or any other employee, to resolve Plaintiff's complaints of pervasive racial harassment, especially combined with Defendant's decision to demote Plaintiff (and thereafter install numerous cameras to observe and track her every move) to penalize her for reporting a racially hostile work environment, Plaintiff experienced significant stress, which caused numerous medical issues including, but not limited to, panic attacks, insomnia, migraines, and depression. As a direct result, Plaintiff had no choice but to request and take a medical leave of absence beginning on October 21, 2020, which was taken at the advice of Plaintiff's treating physician.

50. By way of Plaintiff's repeated complaints of harassment to Plant Managers, Defendant knew of the racially hostile work environment harbored toward Plaintiff, as well as to other, non-African American supervisors/superintendents. That being said, however, it adamantly refused to remedy the same in any way whatsoever.

51. Following the expiration of her FMLA-protected leave, Plaintiff contacted Defendant to determine the status of her employment and inquire as to what she needed to do to return to work. Plaintiff did not receive any response from Defendant, either during her period of FMLA leave or at any time thereafter.

52. Plaintiff subsequently learned that Defendant discontinued her payroll checks, such that, upon good information and belief, Defendant terminated Plaintiff in approximately February 2021.

53. Alternatively, and because Defendant did not provide Plaintiff with any additional information regarding the "basis" of her discharge, Plaintiff submits that, to the extent Defendant argues that resigned," Plaintiff's resignation is tantamount to a constructive discharge, which was caused by Defendant's repeated failure to remedy known workplace harassment and thereafter demote Plaintiff altogether.

54. Defendant failed to act in accordance with 42 U.S.C. § 2000e-2(a)(1).

55. Defendant's conduct is willful, intentional, and committed with malice or reckless indifference to the protected rights of Plaintiff.

56. As a result of Defendant's discriminatory conduct, Plaintiff has suffered non-pecuniary losses including but not limited to emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses to be more fully developed at the trial on this matter.

57. As a result of Defendant's discriminatory conduct, Plaintiff has suffered monetary losses including, but not limited to, back pay, front pay, medical and other benefits, and other losses to be more fully developed at the trial on this matter.

58. Wherefore Plaintiff asks this Honorable Court to find Defendant, **DG Foods, LLC**, liable for the violation of 42 U.S.C. § 2000e-2(a)(1).

## SECOND CAUSE OF ACTION:
### Title VII Retaliation
*Pursuant to 42 U.S.C. § 2000e et seq.*

59. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

60. Title VII makes it an unlawful employment practice for a person covered by the Act to discriminate against an individual "because [s]he has opposed any practice made an unlawful practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

61. Plaintiff reported what she perceived to constitute unlawful racial harassment to her Plant Manager, John White ("White").

62. Within four (4) days of Plaintiff's complaint to White, Defendant demoted Plaintiff on October 12, 2020, which resulted in an approximately $10,000 pay cut, in addition to loss of supervisory duties and a change from day shift to night shift. This demotion constitutes a materially adverse action for purposes of Title VII.

63. Prior to Defendant's decision to demote Plaintiff on October 12, 2020, Plaintiff had not received any performance-related write-ups, verbal reprimands, or disciplinary action of any kind.

64. Any justification offered by Defendant for demoting Plaintiff is pretextual and unworthy of credence. At no point prior to the October 12, 2020 had Plaintiff received any written or verbal reprimands, and she had been told by White, just a few hours prior, that he thought she was doing a "great job" in her role.

65. Following Defendant's refusal to address Jones, or any other employee, to resolve Plaintiff's complaints of pervasive racial harassment, especially combined with Defendant's decision to demote Plaintiff and seemingly penalize her for reporting a racially hostile work environment, Plaintiff experienced significant stress, which caused numerous medical issues including, but not limited to, panic attacks, insomnia, migraines, and

depression. Thus was further exacerbated by Defendant installing several cameras in Plaintiff's office and White keeping a detailed journal of Plaintiff's activities to a uncomfortable, concerning degree.

66. As a direct result, Plaintiff had no choice but to request and take a medical leave of absence beginning on October 21, 2020, which Plaintiff took at the advice of Plaintiff's treating physician.

67. By way of Plaintiff's repeated complaints of harassment to Plant Managers, Defendant knew of the racially hostile work environment harbored toward Plaintiff, as well as to other, non-African American supervisors/superintendents. That being said, however, it adamantly refused to remedy the same in any way whatsoever.

68. Following the expiration of her FMLA-protected leave, Plaintiff contacted Defendant to determine the status of her employment and inquire as to what she needed to do to return to work. Plaintiff did not receive any response from Defendant, either during her period of FMLA leave or at any time thereafter.

69. Plaintiff subsequently learned that Defendant discontinued her payroll checks, such that, upon good information and belief, Defendant terminated Plaintiff in approximately February 2021.

70. Alternatively, and because Defendant did not provide Plaintiff with any additional information regarding the "basis" of her discharge, Plaintiff submits that, to the extent Defendant argues that resigned," Plaintiff's resignation is tantamount to a constructive discharge, which was caused by Defendant's repeated failure to remedy known workplace harassment and thereafter demote Plaintiff altogether.

71. Whether Plaintiff was constructively discharged or terminated, she was subjected to a second form of materially adverse action by Defendant.

72. Defendant failed to act in accordance with 42 U.S.C. § 2000e-3(a).

73. Defendant's conduct is willful, intentional, and committed with malice or reckless indifference to the protected rights of Plaintiff.

74. As a result of Defendant's discriminatory conduct, Plaintiff has suffered non-pecuniary losses including but not limited to emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses to be more fully developed at the trial on this matter.

75. As a result of Defendant's discriminatory conduct, Plaintiff has suffered monetary losses including, but not limited to, back pay, front pay, medical and other benefits, and other losses to be more fully developed at the trial on this matter.

76. Wherefore Plaintiff asks this Honorable Court to find Defendant, **DG FOODS, LLC**, liable for the violation of 42 U.S.C. § 2000e-3(a).

### THIRD CAUSE OF ACTION
### FMLA INTERFERENCE
*Pursuant to 29 U.S.C. § 2601 et seq.*

77. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

78. The FMLA makes it unlawful for an employer to interfere with, restrain, or deny the exercise of or attempt to exercise or of the attempt to exercise a substantive FMLA right or to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by the statute. 29 U.S.C. § 2615(a)(1) & (2).

79. Upon information and belief, Defendant is a "covered employer" under the FMLA and, is thus, subject to FMLA requirements. Defendant is an entity or person engaged in

commerce who employs 50 or more employees for each working day during each of 20 or more calendar weeks in the current or preceding calendar year.

80. Upon information and belief, Plaintiff is an "eligible employee." Prior to her request for medical leave, Plaintiff had worked for Defendant for at least twelve (12) months and for at least 1,250 hours during the twelve (12) months preceding her leave. As such, Plaintiff satisfies the requirement of 29 C.F.R. 825.110(a)(1)-(2).

81. Upon information and belief, Plaintiff was employed at a worksite that, between Plaintiff's worksite and all worksites within 75 miles of that worksite, contained fifty (50) or more employees. As such, Plaintiff satisfies the requirement of 29 C.F.R. 825.110(a)(3).

82. By virtue of her panic attacks, insomnia, depression and migraines, Plaintiff suffered from a serious health condition that rendered Plaintiff unable to perform the essential functions of her position for a certain amount of time. Not only was Plaintiff incapacitated for more than three (3) consecutive days, but she required continuing treatment by a healthcare provider. Plaintiff otherwise was unable to work due to her conditions while they remained active.

83. Plaintiff requested a medical leave of absence on October 20, 2020. At the time she made the request, Plaintiff's need for leave was unforeseeable. As such, Plaintiff provided notice as soon as practicable under the circumstances.

84. Upon information and belief, Plaintiff went on an approved FMLA leave from October 21, 2020 through January 20, 2021.

85. At this time, Plaintiff is without documentation to confirm when Defendant terminated Plaintiff's employment. As such, to the extent Defendant terminated Plaintiff's

employment, or otherwise refused to return her to work in a comparable position, Defendant interfered with Plaintiff's rights under the FMLA.

86. Defendant wrongfully interference and restrained Plaintiff's rights in violation of 29 U.S.C. § 2615(a)(1).

87. Defendant's actions were willful, intentional, and committed with malice or reckless indifference to the protected rights of Plaintiff.

88. Wherefore Plaintiff asks this Honorable Court to find Defendant, **DG FOODS, LLC**, liable for the violation of 29 U.S.C. § 2615(a)(1).

### FOURTH CAUSE OF ACTION:
### FMLA RETALIATION
*Pursuant to 29 U.S.C. § 2601 et seq.*

89. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

90. Plaintiff requested and was granted a medical leave of absence pursuant to the FMLA. As such, Plaintiff engaged in activity protected by the FMLA.

91. Upon information and belief, Plaintiff was terminated from employment at some point in 2021, the specific date of which is currently unknown to Plaintiff due to Defendant not communicating with Plaintiff during the pendency of her leave.

92. Plaintiff's termination was motivated by Plaintiff's use of FMLA leave.

93. Upon information and belief, Defendant terminated Plaintiff during her exercise of FMLA leave.

94. Defendant failed to act in accordance with 29 U.S.C. § 2615(a)(2).

95. Defendant's retaliation is willful, intentional, and committed with malice or reckless indifference to the protected rights of Plaintiff.

96. As a result of Defendant's discriminatory conduct, Plaintiff has suffered non-pecuniary losses including but not limited to emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses to be more fully developed at the trial on this matter.

97. As a result of Defendant's discriminatory conduct, Plaintiff has suffered monetary losses including, but not limited to, back pay, front pay, medical and other benefits, and other losses to be more fully developed at the trial on this matter.

98. Wherefore Plaintiff asks this Honorable Court to find Defendant, **DG FOODS, LLC**, liable for the violation of 29 U.S.C. § 2615(a)(2).

### FIFTH CAUSE OF ACTION:
### Violation of 42 U.S.C. § 1981

99. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

100. 42 U.S.C. § 1981 protects the equal right of all persons within the jurisdiction of the United States to make and enforce contracts without respect to race. 42 U.S.C. § 1981(a). The statute currently defines "make and enforce contracts" to include the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship. 42 U.S.C. § 1981(b). 42 U.S.C. § 1981 ensures that all persons have the same right to make and enforce contracts, including the making, performance, modification, and termination of employment contracts.

101. Plaintiff incorporates the contents of Paragraphs 1-74 by reference, as Title VII and § 1981 claims are analyzed under the same evidentiary standards.

102. Wherefore, Plaintiff asks this Honorable Court to find that, under 42 U.S.C. § 1981, Defendant, **DG FOODs, LLC**, be found liable for the violation of 42 U.S.C. § 1981.

*{Remainder of Page Intentionally Left Blank}*

## PRAYER

**WHEREFORE**, Plaintiff, **HEATHER ALFORD**, requests that his Honorable Court enter judgment against Defendant providing the following relief:

(a) All damages to which Plaintiff may be entitled, including but not limited to back pay, reimbursement for lost position and training, social security and other benefits, front pay, and any and all statutory relief;

(b) Punitive or exemplary damages;

(c) Liquidated damages;

(d) Reasonable attorney's fees, with conditional awards in the event of appeal;

(e) Pre-judgment interest at the highest rate permitted by law;

(f) Post-judgment interest from the judgment until paid at the highest rate permitted by law;

(g) Costs, including expert fees;

(h) Reasonable and necessary medical care and expenses in the past and future;

(i) Mental anguish damages in the past and future;

(j) Injunctive relief; and

(k) Such other and further relief, at law or in equity, to which Plaintiff may be entitled.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of Federal Rules of Civil Procedure, the Plaintiff demands trial by jury in this action of all issues so triable.

                **Respectfully Submitted**,

                **SUDDUTH & ASSOCIATES, LLC**
                1109 Pithon St.
                Lake Charles, Louisiana 70601
                Tel: (337) 480-0101
                Fax: (337) 419-0507
                Email: james@saa.legal

**BY:** */s/ James E. Sudduth, III*
      **JAMES E. SUDDUTH, III, #35340**
      **KOURTNEY L. KECH, #37745**
      **PIERCE A. RAPIN, #38579**
      *Counsel for Plaintiff*