UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

HEATHER R. ALFORD                    CIV. ACTION NO. 3:22-05758

VERSUS                               JUDGE DAVID C. JOSEPH

DG FOODS, L. L. C.                   MAG. JUDGE KAYLA D. MCCLUSKY

<u>REPORT AND RECOMMENDATION</u>

Before the undersigned Magistrate Judge, on reference from the District Court, is a Rule 12(b)(6) motion for partial dismissal for failure to state a claim upon which relief can be granted [doc. # 4] filed by Defendant, DG Foods, L.L.C. The motion is opposed. For reasons explained below, it is recommended that the motion be GRANTED IN PART and DENIED IN PART.

<u>Background</u>

On October 19, 2022, Plaintiff Heather Alford ("Alford") filed the instant civil rights complaint against her former employer and lone Defendant, DG Foods, L.L.C. ("DG Foods"). (Compl.). Alford, who is a Caucasian U.S. citizen of Hispanic national origin/ethnicity, worked for DG Foods as a shift manager/superintendent from July 2, 2018, until her effective termination in February 2021. *Id*., ¶¶ 6-8, 11, 37. During her tenure, she alleges that she performed her duties in an exemplary fashion and never received any verbal or written reprimands. *Id*., ¶ 12.

Nonetheless, shortly after Alford's hire, an African-American supervisor, Vanessa Jones ("Jones") loudly expressed her hatred for "white folks." *Id*., ¶ 13. Jones thereafter regularly accused Alford of being an oppressor and waged a campaign of progressive harassment against her solely on the basis that Alford "was a different race and nationality" than the vast majority of

the African-American DG Foods employees at the Bastrop, Louisiana facility. *Id.*, ¶ 14. Despite reporting Jones' harassing behavior to the plant managers on numerous occasions, DG Foods took no action. *Id.*, ¶ 16.

On October 8, 2020, Jones loudly instructed other African-American employees on the production line not to take work orders from Alford. *Id.*, ¶ 17. Shortly thereafter, an African-American hourly associate, Lawanda Williams ("Williams"), told Alford that Jones had stated that she would do whatever was required to get rid of Alford and that "it's fixing to be a war up in here! Black versus White"! *Id.*, ¶ 18. Fearing for her safety, Alford reported the incident to the plant manager and advised him that she was leaving for the day because she felt unsafe. *Id.*, ¶ 19. Ultimately, the plant manager did not take Williams' warning seriously because Williams constantly was in trouble and had numerous mental health issues. *Id.*, ¶ 22.

On October 12, 2020, the DG Foods plant managers met with Alford and informed her that she was being demoted and transferred to the night shift, with a $10,000 pay reduction. *Id.*, ¶ 23. Alford requested and received a couple of days to consider her options. *Id.*, ¶ 25. While Alford mulled the proposal over, DG Foods took the opportunity to install nine cameras in and around Alford's office. *Id.*, ¶ 26. When Alford returned to work, she observed the new cameras and felt intimidated, scared, and violated. *Id.*, ¶ 27.

On October 20, 2020, Alford's roommate, who also happened to be DG Foods' night shift superintendent, sent Alford a photograph of a notebook found in the plant manager's office that detailed Alford's workday, minute-by-minute. *Id.*, ¶ 29. After viewing the image, Alford became distraught and sought treatment with her physician who took her off of work because of

her stress-induced conditions, including panic attacks, insomnia, migraines, and depression.  *Id*., ¶ 30.

On October 21, 2020, Alford requested a medical leave of absence under the Family and Medical Leave Act ("FMLA") because of the stress that she was experiencing.  *Id*., ¶ 31.  DG Foods approved Alford's FMLA leave, which was scheduled to last from October 21, 2020, through January 21, 2021.  *Id*., ¶ 32.  Throughout her leave, DG Foods did not contact Alford regarding accommodations or her anticipated return-to-work date.  *Id*., ¶ 33.

In February 2021, Alford contacted DG Foods to inquire whether she still was employed and whether she could return to work.  *Id*.  DG Foods did not respond to Alford's inquiry and effectively terminated her employment, at that time.  *Id*., ¶¶ 36-37.

As a precursor to suit, Alford filed a charge with the Equal Employment Opportunity Commission ("EEOC") on February 12, 2021, and received a right to sue letter on or about August 4, 2022.  (Compl., ¶¶ 3-4).

Alford's Complaint includes claims for race and national origin discrimination in employment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.; and 42 U.S.C. § 1981; plus violations of the FMLA, 29 U.S.C. § 2601, *et seq*., in the following particulars:

- race and national origin-based Title VII claims for hostile work environment, discrimination, and retaliation;

- an unspecified claim under 42 U.S.C. § 1981;

- FMLA interference claim; and an

- FMLA retaliation claim.

(Compl.)  Alford seeks compensatory, liquidated, punitive, and/or exemplary damages, plus

reasonable attorney's fees, injunctive relief, and costs, including expert fees.  (Compl., Prayer).

On December 20, 2022, DG Foods filed the instant Rule 12(b)(6) motion for partial dismissal of certain claims on the following grounds:

(1) Alford failed to exhaust her administrative remedies for her national origin claims under Title VII;

(2) Alford's § 1981 claim for retaliatory demotion is time-barred;

(3) Alford cannot state a claim for FMLA interference because she concedes that she received and exhausted all leave to which she was entitled under the FMLA; and

(4) Alford cannot state a claim for FMLA retaliation based on her termination/constructive discharge because she failed to return to work upon exhaustion of her FMLA leave.

Alford filed her opposition to the motion to dismiss on January 10, 2023.  (Pl. Opp. Memo. [doc. # 11]).  DG Foods filed its reply brief on January 17, 2023.  (Def. Reply [doc. # 12]).  Accordingly, the matter is ripe.

## Rule 12(b)(6) Principles

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  A pleading states a claim for relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ."  FED. R. CIV. P. 8(a)(2).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).  A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between.  *See id.*  Plausibility simply

4

calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim.  *See Twombly*, 550 U.S. at 556.  Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal,* 556 U.S. at 679 (citation omitted).  A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely.  *Twombly*, 550 U.S. at 556.

Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions.  *Iqbal,* 556 U.S. at 678.  A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8.  *Id*.  Moreover, courts are compelled to dismiss claims grounded upon invalid legal theories even though they might otherwise be well-pleaded.  *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).

Nevertheless, "[t]he notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision."  *Gilbert v. Outback Steakhouse of Florida Inc.*, 295 Fed. App'x. 710, 713 (5th Cir. 2008) (citations and internal quotation marks omitted).  Further, "a complaint need not pin plaintiff's claim for relief to a precise legal theory.  Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of [her] legal argument."  *Skinner v. Switzer*, 562 U. S. 521, 530 (2011).  Indeed, "[c]ourts must focus on the substance of the relief sought and the allegations pleaded, not on the label used."  *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) (citations omitted). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the

5

grounds upon which it rests.'" *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (quoting *Bell Atl.*, 127 S. Ct. at 1958).

"[A]n employment discrimination plaintiff need not plead a prima facie case of discrimination" to survive a Rule 12(b)(6) motion. *Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002); *see also Raj v. Louisiana State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013). The Supreme Court explained that the *McDonnell Douglas* framework[1] "is an evidentiary standard, not a pleading requirement." *Id.* at 510.[2] Accordingly, a plaintiff's complaint need only comply with Rule 8, which requires no more than "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8; *Swierkiewicz*, 423 U.S. at 515.

However, the Fifth Circuit maintains that the prima facie standard *is* relevant at the motion to dismiss stage at least in the sense that a plaintiff is obliged to plead facts as to each of the ultimate *elements* of her claim sufficient to render the case plausible. *Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 470 (5th Cir. 2016). In other words, it may be helpful to reference the *McDonnell Douglas* framework on which plaintiff must rely if she bases her claim on circumstantial evidence. *Id.* Nonetheless, *McDonnell Douglas* is not dispositive at the pleading stage because it may not even apply if discovery reveals direct evidence of discrimination. *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1212 (5th Cir. 2021), *as revised* (Nov. 26, 2021).

More recently, the Supreme Court has clarified that "*McDonnell Douglas* can provide no basis for allowing a complaint to survive a motion to dismiss when it fails to allege essential

---

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973).

[2] Furthermore, *Twombly* did not overrule *Swierkiewicz*. *See Twombly*, 550 U.S. at 569-70, 127 S.Ct. 1955.

elements of a plaintiff's claim." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, ___

U.S. ___, 140 S.Ct. 1009, 1019 (2020).  Moreover, "the essential elements of a claim remain

constant through the life of a lawsuit."  *Id*.  Therefore, a claim under 42 U.S.C. § 1981 follows

the general rule that a "plaintiff must demonstrate that, but for the defendant's unlawful conduct,

[her] alleged injury would not have occurred."  *Id*.  Although the *McDonnell Douglas* framework

arose at a time when but-for causation was the undisputed test, a plaintiff still must set forth facts

to support the essential elements of her claim to survive a motion to dismiss.  *Id*.

<u>Analysis</u>

**I.    Administrative Exhaustion**

DG Foods seeks dismissal of Alford's national origin-based Title VII claims because she

purportedly failed to exhaust those claims at the administrative level before the EEOC.  Title

VII's charge-filing requirement is not jurisdictional.  *Fort Bend Cty., Texas v. Davis*,  ___U.S.

___, 139 S.Ct. 1843, 1850 (2019).  Therefore, the issue may be raised and addressed within a

Rule 12(b)(6) motion.  Although failure to exhaust administrative remedies represents an

affirmative defense that may be raised via 12(b)(6) motion, dismissal may be granted on that

basis only if the defense is evident from the face of the complaint.  *Luebano v. Office Dept,

L.L.C.*, 2023 WL 4249268, at *3 (5th Cir. June 29, 2023) (unpubl.) (citations omitted).

It is manifest that "[b]efore seeking relief in federal court, Title VII plaintiffs must

exhaust their administrative remedies."  *Stroy v. Gibson on behalf of Dep't of Veterans Affairs*,

896 F.3d 693, 698 (5th Cir. 2018) (citation omitted); *Taylor v. Books A Million, Inc*. 296 F.3d

376, 378 -379 (5th Cir. 2002).   A Title VII plaintiff exhausts administrative remedies when she

files a timely charge with the EEOC and receives a statutory notice of right to sue.  *Taylor,* 296

F.3d at 379.

The primary purpose of administrative exhaustion is "to facilitate the [EEOC's]

investigation and conciliatory functions and to recognize its role as primary enforcer of anti-discrimination laws . . ." *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 337 (5th Cir. 2021) (quoted source omitted). In addition, the employment discrimination charge provides the employer with notice of the existence and general substance of the discrimination allegation. *Id*. (citation omitted). Consequently, to satisfy exhaustion, a claim generally must arise out of the plaintiff's EEOC charge. *Id*. "Courts should not condone lawsuits that exceed the scope of EEOC exhaustion, because doing so would thwart the administrative process and peremptorily substitute litigation for conciliation." *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008).

In support of its motion, DG Foods produced a copy of Alford's Charge of Discrimination No. 461-2021-00177 that she filed with the EEOC. (M/Dismiss, Exh. A).[3] On the charge form, Alford checked the boxes for discrimination based on race and retaliation only. *Id*. Alford also concedes that the factual statement on her charge "only mention[ed] 'White' and [did] not mention or allude to her Hispanic origin." (Pl. Opp. Memo., pg. 4).

The Fifth Circuit construes EEOC charges broadly to look beyond the four corners of the document to its substance and the administrative EEOC investigation that "can reasonably be expected to grow out of the charge of discrimination." *McClain, supra* (citation omitted). Thus, "a Title VII lawsuit may include allegations 'like or related to allegation[s] contained in the [EEOC] charge and growing out of such allegations during the pendency of the case before the Commission.'" *Id*. (quoted source omitted).

Alford argues that the EEOC's investigation of her race-based claims also encompassed

---

[3] Alford referenced Charge No. 461-2021-00177 in her Complaint. (Compl., ¶ 3). She also agrees that the court may consider the charge for purposes of the present motion. (Pl. Opp. Memo., pg. 2).

a national origin claim because, during the investigation, she submitted a rebuttal statement wherein she stated that "[t]here was an agenda for a certain group of employees and their agenda was to run off all of the white/*Hispanic*/nonafrican american members of management." (May 16, 2021 Letter from H. Alford to B. Bryant, DG Foods G.M.; Pl. Opp. Memo., Exh. B) (emphasis added). However, DG Foods does not concede the authenticity of the May 16 letter and its attachments. *See* Reply Brief. Moreover, the letter is not referenced in Alford's complaint, and there is no indication that the letter was received by the EEOC and made part of the EEOC administrative record. Accordingly, Alford has not established that the court may consider her May 16 letter, and its attachments, in the context of the present motion.[4]

In addition, while courts have recognized that other documents may serve as an EEOC charge for the purpose of administrative exhaustion, the document still must satisfy the EEOC's charge-filing requirement, which means, at minimum, it must have been submitted to the EEOC, in writing, signed, and verified. *Ernst, supra* (citations omitted). Here, there is no indication that, apart from constituting a writing, the May 16 letter satisfies the remaining criteria.

Nonetheless, even without consideration of Alford's submissions, a claim for national origin discrimination is likely to grow out of Alford's race-based claim of discrimination set forth in her EEOC charge. The EEOC defines national origin discrimination broadly to include "the denial of equal employment opportunity because of an individual's, or his or her ancestor's, place of origin; or because an individual has the physical, cultural or linguistic characteristics of a national origin group." 29 C.F.R. § 1606.1 (in pertinent part); *Espinoza v. Farah Mfg. Co.,*

---

[4] Alford also attached a copy of DG Foods' April 12, 2021 EEOC position paper, plus attachments. (Apr. 12, 2021 Letter from B. Bryant to B. Slyve; Pl. Opp. Brief, Exh. A). However, there is nothing in those documents to suggest that DG Foods contemplated a Title VII claim on the basis of national origin discrimination.

*Inc.*, 414 U.S. 86; 94 S.Ct. 334, 336 (1973) (the term, "national origin" refers to "the country where a person was born, or, more broadly, the country from which his or her ancestors came.").

Here, Alford alleged that she was "White," which constitutes a physical characteristic related to her ancestor's place of origin.  Furthermore, to investigate Alford's claim of race discrimination, the EEOC (and DG Foods) would have had to inquire about and consider the charging party's race and ethnicity, and thereby confirmed the fact that Alford was a Caucasian/Hispanic.  In fact, "'Hispanic' is often understood to refer to someone's race." *Booth v. Pasco Cnty., Fla.*, Civ. Action No. 09-2621, 2010 WL 2757209, at *10 (M.D. Fla. July 13, 2010) (citation omitted).[5]

Furthermore, according to the Complaint, Alford's race-based claims are premised on the same facts as her national origin claims.  Because the circumstances that led to Alford's alleged discrimination at DG Foods are inextricably with her race and national origin, Alford's national origin claim would "reasonably be expected to grow out of the initial charges of discrimination" based on her race.  *See Delgado v. LaHood*, Civ. Action No. 09-22819, 2010 WL 11506037, at *3 (S.D. Fla. Mar. 11, 2010); *see also Booth v. Pasco Cnty., Fla.*, Civ. Action No. 09-2621, 2010 WL 2757209, at *10 (M.D. Fla. July 13, 2010).[6]  Accordingly, Alford has administratively

---

[5] The Fifth Circuit has emphasized that the line between national origin discrimination and racial discrimination is an extremely difficult one to trace," and, in some contexts, even may be "indistinguishable." *Bullard v. OMI Georgia, Inc.*, 640 F.2d 632, 634 (5th Cir. 1981) (Unit B) (citation omitted).  Also, discrimination against Hispanics often is referred to interchangeably as race and/or national origin discrimination. *See Equal Employment Opportunity Comm'n v. Alden Short*, Civ. Action No. 18-2125, 2021 WL 4502413, at *1 (N.D. Tex. Sept. 30, 2021).

[6] Ultimately, because Alford's national origin claim under Title VII is merely another way of characterizing her race-based claim, and both are premised upon the same set of facts and conduct, it is likely that the national origin claim is superfluous. *See Thompson v. Lane*, Civ. Action No. 12-00526, 2014 WL 4925622, at *7 (M.D. La. Sept. 30, 2014) (recognizing that, in light of plaintiff's race discrimination claim, his national origin claim was duplicative and superfluous).

exhausted her national origin-based claims.

## II.    Retaliatory Demotion Claim under § 1981

Section § 1981 provides that

(a) Statement of equal rights
All persons within the jurisdiction of the United States shall have the same right
in every State and Territory to make and enforce contracts, to sue, be parties, give
evidence, and to the full and equal benefit of all laws and proceedings for the
security of persons and property as is enjoyed by white citizens, and shall be
subject to like punishment, pains, penalties, taxes, licenses, and exactions of every
kind, and to no other.

(b) "Make and enforce contracts" defined
For purposes of this section, the term "make and enforce contracts" includes the
making, performance, modification, and termination of contracts, and the
enjoyment of all benefits, privileges, terms, and conditions of the contractual
relationship.

42 U.S.C. § 1981(a)-(b).  Section 1981 "affords a federal remedy against discrimination in

private employment on the basis of race." *Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 459–

60; 95 S.Ct. 1716, 1720 (1975).[7]

DG Foods contends that Alford's retaliatory demotion claim under § 1981 is time-barred

because she did not file the instant suit within one-year of her October 12, 2021 alleged

retaliatory demotion.   Although limitations is an affirmative defense, a district court is

authorized to dismiss a case (even *sua sponte*) when "it is clear from the face of the complaint

that the claims asserted are barred by the applicable statute of limitations." *Stanley v. Foster*,

464 F.3d 565, 568 (5th Cir. 2006) (citation omitted).  "A motion to dismiss may be granted on a

statute of limitations defense where it is evident from the pleadings that the action is time-barred,

---

[7] Even an at-will employee stands in a contractual relationship with her employer and thus may
maintain a cause of action under § 1981. *Fadeyi v. Planned Parenthood Ass'n of Lubbock, Inc.*,
160 F.3d 1048, 1050 (5th Cir. 1998).

and the pleadings fail to raise some basis for tolling." *Taylor v. Bailey Tool Mfg. Co.*, 744 F.3d 944, 946 (5th Cir. 2014) (citation omitted).

For claims arising under the pre-1991 version of 42 U.S.C. § 1981, courts apply the general statute of limitations governing personal injuries in the forum state, i.e., the same limitations period as for § 1983 claims. *Grigsby & Associates, Inc. v. City of Shreveport*, 294 F. Supp.3d 529, 538–39 (W.D. La. 2018) (citations omitted). "In Louisiana, the applicable section 1983 limitation is one year." *Mejia v. Unknown Officers*, 168 F.3d 485 (5th Cir. 1999) (citing, *inter alia*, Louisiana Civ. Code Ann. art. 3492)); *see also Taylor v. Bunge Corp.*, 775 F.2d 617, 618 (5th Cir. 1985) (a § 1981 claim is governed by the one-year prescriptive period for delictual actions in Louisiana).

In 1990, however, Congress created a general four-year limitations period for federal civil actions. *Lewis v. City of Shreveport*, Civ. Action No. 16-1115, 2018 WL 752362, at *5 (W.D. La. Feb. 7, 2018) (citing Judicial Improvements Act of 1990, Pub. L. 101-650, § 313(a), 104 Stat. 5114 (codified at 28 U.S.C. § 1658). By its terms, Section 1658's new four-year limitations period applies only to civil actions arising under an Act of Congress that was enacted after § 1658 was enacted, i.e., after 1990. 28 U.S.C. § 1658(a). The Supreme Court later confirmed that, "a cause of action 'aris[es] under an Act of Congress enacted' after December 1, 1990—and therefore is governed by § 1658's 4–year statute of limitations—if the plaintiff's claim against the defendant was made possible by a post–1990 enactment." *Jones v. R.R. Donnelley & Sons, Co.,* 541 U.S. 369, 382, 124 S.Ct. 1836 (2004). Therefore, if Alford's causes of action arise under a federal statute enacted after December 1, 1990, the court must apply a four-year statute of limitations. *Mitchell v. Crescent River Port Pilots Ass'n*, 265 Fed. App'x. 363, 367 (5th Cir. 2008).

In 1989, the Supreme Court held in *Patterson v. McLean Credit Union* that "the then-

12

current language of § 1981 provided two rights:  protection against the refusal to enter into a

contract with someone on the basis of race and protection against racial discrimination that

infects the legal process in ways that prevent one from enforcing contractual rights."  *Mitchell,*

265 F. App'x at 368 (citing *Patterson v. McLean Credit Union*, 491 U.S. 164, 179; 109 S.Ct.

2363 (1989)); *see also Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 339 (5th Cir. 2003).

In 1991, Congress legislatively overruled *Patterson* and expanded § 1981 to include "the

making, performance, modification, and termination of contracts, and the enjoyment of all

benefits, privileges, terms, and conditions of the contractual relationship."  *Foley*, 355 F.3d at

339 (citations omitted).  Thus, the Civil Rights Act of 1991 "create[d] a new cause of action for

discriminatory and retaliatory conduct occurring after the formation of the contract."  *Belton v.*

*GEO Grp., Inc.*, 2021 WL 5832953, at *4 (5th Cir. 2021) (unpubl.) (citation omitted).  In *Jones,*

the Supreme Court held that claims for hostile work environment, wrongful termination, and

failure to transfer claim "ar[ose] under" the 1991 Act in the sense that they were made possible

by the Act.  Further, this court has recognized that a § 1981 demotion claim did not become

actionable until the 1991 Civil Rights Act, and, consequently, is subject to a four-year statute of

limitations.  *Knox v. City of Monroe*, 551 F.Supp.2d 504, 511–12 (W.D. La. 2008).

In its motion, DG Foods cited Fifth Circuit decisions that pre-date not only the *Patterson*

decision, but also the four-year limitations period passed by Congress in 1990, as well as the

Civil Rights Act of 1991.  *See McWilliams v. Escambia Cnty. Sch. Bd.*, 658 F.2d 326, 329 (5th

Cir. 1981); *Taylor v. Bunge Corp.*, 775 F.2d 617, 619 (5th Cir. 1985).  Needless to say, the legal

landscape has shifted since those decisions were rendered.

In its reply brief, DG Foods emphasized that Alford's demotion amounted to such a

significant change in duties, responsibilities, and salary that the demotion amounted to the

formation of a new contract, which it analogized to a failure to promote claim where the

13

promotion amounted to a new and distinct relation between the employee and the employer that was actionable under § 1981 prior to the 1991 amendments.  (Def. Reply Brief, pgs. 7-8 and n.3).

The undersigned is not persuaded.  As recited above, prior to the Civil Rights Act of 1991, § 1981 accorded two rights:  protection against the *refusal to enter into a contract* with someone on the basis of race and protection against racial discrimination that infects the *legal process* in ways that prevent one from enforcing contractual rights.  *See Mitchell,* 265 F. App'x at 368.  Alford is not seeking to vindicate either of the foregoing rights in this case.[8]  Therefore,

---

[8]  The following discussion from a 1990 Texas district court decision proves instructive:

> Jackson's § 1981 claim does not rest on allegations of retaliatory discharge, but instead focuses on Jackson's demotion. Jackson contends GTE Service discriminated against him on the basis of race in connection with Jackson's performance appraisals and subsequent demotion. Realizing that he complains only of post-formation conduct barred by *Patterson, see Alexander v. New York Medical College,* 721 F.Supp. 587, 588 (S.D.N.Y.1989) (demotion not actionable under § 1981), Jackson analogises his situation to one where an employee is denied a *promotion* because of race, an event the Supreme Court has indicated may give rise to a § 1981 action. Whether a promotion claim is actionable under § 1981 depends upon the nature of the change in position. *Patterson,* 109 S.Ct. at 2377. The nature of the change must involve the opportunity to enter into a new contract with the employer. *Id.* A promotion claim is actionable only where the opportunity is present to enter into a "new and distinct" relation with the employer. *Id.*

> The court has little hesitancy in concluding Jackson's demotion claim does not fall within the ambit of viable § 1981 claims left in the wake of *Patterson.* A demotion claim is demonstrably *not* a claim that rests on an opportunity for an employee to enter into a new and distinct relation with an employer. A demoted employee is not complaining of discrimination in the making of a new contract, but is instead urging that he was discriminated against in his previous position. Unless the employee can demonstrate that he was forced to enter into a racially discriminatory contract *following* his demotion, there is no basis for circumventing *Patterson* to create an additional § 1981 action. *See Patterson v. McLean Credit Union,* 729 F.Supp. 35, 36 (M.D.N.C.1990) (district court opinion following remand) (promotion claim barred as not amounting to "an opportunity for a new and distinct relation" between plaintiff and her employer). Heeding the Supreme Court's admonition that a lower court "should not strain in an undue manner the language of § 1981," *Patterson,* 109 S.Ct. at 2377, the court concludes a demotion claim is not actionable under §

her retaliatory demotion claim did not become actionable until passage of the 1991 Civil Rights

Act and is subject to a four-year statute of limitations.  Alford's § 1981 claims are timely.

### III.    FMLA Claims

"The Family and Medical Leave Act of 1993 allows eligible employees working for

covered employers to take temporary leave for medical reasons, for the birth or adoption of a

child, and for the care of a spouse, child, or parent who has a serious health condition, without

the risk of losing employment."  *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 762 (5th

Cir. 2001), *abrogated on other grounds by Burlington Northern & Santa Fe Railway v.*

*White,* 548 U.S. 53, 126 S.Ct. 2405 (2006) (citing 29 U.S.C. § 2601(b)(1) and (2)).  There are

two separate provisions set forth in the FMLA, one prescriptive and one proscriptive.  *Id.* at 763.

The prescriptive provision gives employees certain entitlements and forbids employers from

interfering with those entitlements.  *Bocalbos v. Nat'l Western Life Ins.*, 162 F.3d 379, 383 (5th

Cir. 1998).  The proscriptive provision of the FMLA prohibits an employer from penalizing an

employee for exercising her rights under the FMLA.  *Hunt*, 277 F.3d at 763.

In this case, Alford contends that DG Foods violated both her prescriptive and

proscriptive FMLA rights, i.e. that DG Foods interfered with her entitlement to FMLA leave and

terminated her in retaliation for utilizing FMLA leave.  Specifically, Alford alleged that she had

a serious health condition, which rendered her unable to perform the essential functions of her

position for a certain amount of time.  (Compl., ¶ 82).  Accordingly, she went on approved

FMLA leave from October 21, 2020, through January 20, 2021.  *Id*., ¶ 84.  In February 2021, the

---

1981. *See Alexander,* 721 F.Supp. at 588; *Jordan,* 716 F.Supp. at 1368.

*Jackson v. GTE Directories Serv. Corp.*, 734 F.Supp. 258, 266 (N.D. Tex. 1990).

month after her expiration of her approved FMLA leave, she contacted DG Foods to inquire whether her employment remained active and she could return to work. *Id.*, ¶ 36. However, DG Foods never replied to her entreaty and effectively terminated Alford's employment in February 2021. *Id.*, ¶¶ 36-37.

a)    <u>FMLA Interference</u>

Among its myriad entitlements, the FMLA accords an eligible employee the right to twelve weeks of unpaid leave within a twelve-month period because of a serious health condition that makes the employee unable to perform the functions of the position of such employee. 29 U.S.C. § 2612(a)(1)(C). After a qualifying absence, the employer must restore the employee to the same position held by the employee when the leave commenced or to an equivalent position. *Boudreaux v. Rice Palace, Inc.*, 491 F. Supp.2d 625, 639 (W.D. La. 2007) (citing 29 U.S.C. § 2614(a)(1)). "An employer may not 'interfere with, restrain, or deny the exercise of . . . any right provided under' the FMLA." *Id.* (citing, *inter alia*, 29 U.S.C. § 2615(a)(2)).

To establish a prima facie case of interference, a plaintiff must provide support for the following elements: "(1) [s]he was an eligible employee; (2) h[er] employer was subject to FMLA requirements; (3) [s]he was entitled to leave; (4) [s]he gave proper notice of h[er] intention to take FMLA leave; and (5) h[er] employer denied h[er] the benefits to which [s]he was entitled under the FMLA." *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017).

DG Foods argues that Alford fails to state a claim for FMLA interference because she admitted in her Complaint that she received all twelve weeks of FMLA leave to which she was entitled, and then never attempted to return to work upon expiration of her FMLA leave. Indeed, "a plaintiff who exhausts her FMLA leave cannot allege that her employer interfered with her right to take such leave." *Luebano,* 2023 WL 4249268, at *4 (citation omitted). Furthermore,

16

"[i]f an employee fails to return to work on or before the date that FMLA leave expires, the right to reinstatement also expires." *Hunt*, 277 F.3d at 763.

In her opposition brief, Alford argues that DG Foods interfered with her right to reinstatement following her FMLA leave because it ignored her post-leave attempt to ensure her return to work. (Pl. Opp. Memo., pg. 15). Alford *might* have had a plausible argument if she had contacted DG Foods prior to the expiration of her FMLA leave, and DG Foods had ignored her at that time. However, by her own admission, Alford did not inquire about returning to work until at least eleven days after her leave already had expired. By then, it was too late. Accordingly, Alford does not allege a plausible claim against DG Foods for interference of FMLA rights. *Luebano,* 2023 WL 4249268, at *4.

    b)    <u>FMLA Retaliation</u>

A prima facie case of retaliation requires a showing that "(1) [the employee] was protected under the FMLA; (2) she suffered an adverse employment decision; and either (3a) she was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because she took FMLA leave." *Hunt,* 277 F.3d at 768.

As with Alford's interference claim, DG Foods again argues that, because Alford did not attempt to return to work on or before expiration of her FMLA leave, she is not entitled to reinstatement. In *Hunt*, however, the Fifth Circuit took issue with the district court's finding that the plaintiff failed to satisfy the first element of her prima facie case because she had exceeded her twelve weeks of FMLA leave before attempting to return work. *Hunt*, 277 F.3d at 768. The court remarked that "[t]he FMLA's protection against retaliation is not limited to periods in which an employee is on FMLA leave, but encompasses the employer's conduct both during and after the employee's FMLA leave." *Hunt*, 277 F.3d at 768-69. Accordingly, simply because

Alford may have used all of her FMLA leave before her discharge does not preclude her retaliation claim. *See Luebano*, 2023 WL 4249268, at *4 (district court went too far in dismissing plaintiff's FMLA retaliation cause of action by applying the same reasoning it used to dismiss her FMLA interference claim).

Returning to the elements of Alford's prima facie case, the court observes that the complaint otherwise contains sufficient allegations that she was protected under the FMLA, i.e., she was protected under the FMLA, and suffered an adverse employment decision, termination, after she utilized her FMLA leave. *See* Compl. ¶¶ 77-98. Moreover, the temporal proximity between Alford's FMLA leave and the adverse employment action suffices to establish the requisite causal link: "[w]hen evaluating whether the adverse employment action was causally related to the FMLA protection, the court shall consider the 'temporal proximity' between the [FMLA-protected activity] and the termination." *Mauder v. Metro. Transit Auth. of Harris Cnty., Tex.*, 446 F.3d 574, 583 (5th Cir. 2006) (citation omitted). The Fifth Circuit has held that "[c]lose timing between an employee's protected activity and an adverse action against [her] may provide the 'causal connection' required to make out a *prima facie* case of retaliation." *Swanson v. Gen. Serv. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997) (citation omitted).

Here, DG Foods apparently discharged Alford less than 30 days after she inquired about returning to work after her FMLA leave. The Fifth Circuit has held that a time period of five days between the employee's protected activity and her termination was sufficient on its own to establish the causal connection element of plaintiff's prima facie retaliation claim. *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) (a Title VII claim). Furthermore, a fifteen-day lapse and a two-and-one-half month lapse may create an inference of a causal connection. *See Ware v. CLECO Power LLC*, 90 Fed. App'x. 705, 708 (5th Cir. 2004); *Richard v. Cingular Wireless LLC*, 233 Fed. App'x. 334, 338 (5th Cir. 2007).

18

More recently, the Fifth Circuit held that temporal proximity was "quite tight," where plaintiff's FMLA leave expired in September 2020, and her employer started advertising for her position in October, warned that she was being fired in November, and then officially discharged her in January 2021. *Luebano, supra*. The court concluded that "in light of the fact-intensive nature of the causation question, [plaintiff] ha[d] sufficiently alleged a causal link between her statutorily protected leave and [her employer's] decision to fire her, such that her complaint should survive a 12(b)(6) dismissal." *Id*. In other words, Luebano's complaint plausibly established the elements of her FMLA retaliation cause of action. *Id*. The same result follows here.

## IV. Amendment

At the conclusion of her brief, Alford alternatively requests an opportunity to amend her Complaint should the court find it lacking. Certainly, a court is required to freely grant leave to amend when justice so requires it. FED. R. CIV. P. 15(a)(2). However, a court may deny leave when the plaintiff neither provides a copy of the proposed amended complaint, nor explains how the proposed pleading would cure the deficiencies in the initial complaint. *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021), *as revised* (Nov. 26, 2021).

Plaintiff's conditional request for leave to file a theoretical, amended complaint to set forth unspecified facts does not comply with Rule 15 and is DENIED.[9]

---

[9] Because the recommended disposition of the instant motion disposes of fewer than all claims and parties, it is not a final judgment and, therefore, remains subject to revision at any time before conclusion of the case. FED. R. CIV. P. 54(b). Consequently, if Plaintiff uncovers facts sufficient to support a dismissed claim, then she may file a motion for reconsideration of the court's dismissal of that claim(s), together with a proposed amended complaint. It goes without saying, however, that Plaintiff may not dither in her efforts.

**Conclusion**

For the foregoing reasons,

IT IS RECOMMENDED that Defendant, DG Foods, L.L.C.'s Rule 12(b)(6) motion for partial dismissal [doc. # 4] be GRANTED IN PART and DENIED IN PART.  The motion should be GRANTED, and Plaintiff Heather Alford's claim for FMLA interference pursuant to 29 U.S.C. §§ 2601, *et seq*., be DISMISSED WITH PREJUDICE.  FED. R. CIV. P. 12(b)(6).  The motion should otherwise be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.C.P. Rule 72(b), the parties have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he or she makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this **10th day of July, 2023**.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE